# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

WALTER CARTER                                    CIVIL ACTION

VERSUS                                           19-105-SDD-EWD

SID J. GAUTREAUX, III, ET AL.

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, CorrectHealth East Baton Rouge, LLC ("CorrectHealth"). Plaintiff Walter Carter ("Plaintiff") filed an *Opposition*,[2] to which CorrectHealth filed a *Reply*.[3] For the following reasons, CorrectHealth's *Motion* shall be granted in part and deferred in part.

## I.   BACKGROUND

The Court previously granted in part a *Motion to Dismiss* filed by CorrectHealth.[4] Plaintiff filed a *Second Amended Complaint*[5] which CorrectHealth now moves to dismiss.[6] The salient facts were described in the prior *Ruling*,[7] but Plaintiff added some allegations to the *Second Amended Complaint* worth noting here.

Plaintiff entered East Baton Rouge Parish Prison ("EBRPP") on or about April 2, 2018 as a pre-trial detainee, and CorrectHealth conducted a medical screening on or

---

[1] Rec. Doc. No. 46.
[2] Rec. Doc. No. 47.
[3] Rec. Doc. No. 50.
[4] See Rec. Doc. Nos. 37, 44.
[5] Rec. Doc. No. 45.
[6] Rec. Doc. No. 46.
[7] Rec. Doc. No. 44.

66180

about April 4.[8] Plaintiff alleges that he repeatedly requested medical attention for the fourth finger of his left hand on the date of his entry and over the next 17 days.[9] Plaintiff claims that his finger was painful, swollen, tender, and emitting discharge.[10] Somewhere between April 9 and April 12, Plaintiff underwent an x-ray on his finger in response to his complaints that he could not move it and thought it was broken.[11] He was offered over-the-counter medication.[12] By April 17, Plaintiff's condition had worsened as was noted during a "med pass," and while he was scheduled to receive treatment on that day, for whatever reason, he did not.[13] Finally, on April 19, 2018, Plaintiff was transferred to Our Lady of the Lake Regional Medical Center where he was diagnosed with a bone infection and his finger was amputated.[14]

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[15] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16] "To

---

[8] Rec. Doc. No. 45, p. 3.
[9] Rec. Doc. No. 45, p. 3–4.
[10] Rec. Doc. No. 45, p. 3.
[11] *Id.* at p. 4.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[16] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[17]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[19] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[21] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[22] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[23]

### B. Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for

---

[17] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).
[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[20] *Id.*
[21] *Id.*
[22] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[23] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

redressing the violation of federal law by those acting under color of state law.[24] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[25]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[26]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[27] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[28]

### C. Private Entity Liability under § 1983

"For a plaintiff to state a viable claim under § 1983 against any private defendant, the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[29]

CorrectHealth does not dispute that it is a state actor. Accordingly, the Court will apply *Monell v. Dept of Soc. Servs. of the City of New York*.[30]

---

[24] See *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[25] 42 U.S.C. § 1983.
[26] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir. 1996), cert. denied, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[27] See *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[28] See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990), cert. denied, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).
[29] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001).
[30] 436 U.S. 658 (1978).

### D. Episodic-Acts-or-Omissions Claims

A plaintiff asserting an episodic-acts-or-omissions claim must show that appropriate medical care has been denied or delayed and that the state actor who denied or delayed care did so with "deliberate indifference to [the plaintiff's] serious medical needs."[31] "Deliberate indifference is an extremely high standard to meet."[32] It requires (1) knowledge that the inmate faces a substantial risk of serious bodily harm, and (2) failure to take reasonable measures to abate the risk.[33] In the context of medical care, this may be met by showing that the defendant "'refused to treat [the plaintiff], ignored his complaints, intentionally treated him incorrectly,' or otherwise 'evince[d] a wanton disregard for any serious medical needs.'"[34] Further, the plaintiff must establish that the defendant possessed a culpable state of mind: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[35] "Mere negligence, neglect, or medical malpractice" does not constitute deliberate indifference,[36] nor does "gross negligence."[37] Rather, "subjective recklessness as used in the criminal law" is the appropriate standard for "deliberate indifference" under the Fourteenth Amendment.[38] The mere delay of medical care can also constitute a Fourteenth Amendment violation but only "if there has

---

[31] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).
[32] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[33] *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019) (quoting *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019)).
[34] *Id.* at 226 (quoting *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019)).
[35] *Id.* at 237.
[36] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (quoting *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)).
[37] *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).
[38] *Farmer*, 511 U.S. at 839-40; *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d at 881.

been deliberate indifference [that] results in substantial harm."[39]

If a plaintiff establishes that an individual acted with deliberate indifference, and the plaintiff seeks to hold that individual's municipal actor-employer liable, the plaintiff must satisfy additional requirements. To establish municipal liability under § 1983, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[40] The definition of "policy" includes:

> A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.[41]

A policy sufficient to satisfy *Monell* can be found where there is "systemic maladministration of the laws."[42] But *Monell* liability presupposes a "conscious adoption of a course of action" and requires a practice that is "so persistent and widespread and so permanent and well-settled as to constitute a custom or usage with the force of law."[43]

"Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."[44] Elaborating on these requirements, the Fifth Circuit has stated:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of

---

[39] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)); *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d at 881.
[40] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).
[41] *Id.*
[42] *O'Quinn v. Manuel*, 733 F.2d 605, 608 (5th Cir. 1985).
[43] *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 735 (M.D.L.A. 2016).
[44] *Piotrowski v. City of Houston*, 237 F.3d 567 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.[45]

Finally, "[t]o succeed [in alleging 'moving force' causation], 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"[46] "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'"[47]

Applying the law to the facts Plaintiff alleges, the Court finds that Plaintiff's allegations undermine his claim for deliberate medical indifference. Plaintiff alleges that, on or about April 4, he underwent a medical exam which noted swelling in finger.[48] He avers that several days later, medical staff saw Plaintiff again and ordered an x-ray, which was negative for broken bones, and provided him with over-the-counter medication.[49] CorrectHealth staff noted the condition of his finger again on April 17 during a "med pass."[50] He was transported to a hospital on April 19.[51]

CorrectHealth cites *Morales v. McCulloh*, another deliberate indifference case this Court recently decided.[52] The plaintiff in *Morales* was a carrier of the Methicillin-resistant Staphylococcus aureus ("MRSA") virus, and she repeatedly informed prison officials of

---

[45] *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)).
[46] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).
[47] *Id.* (quoting *Brown*, 520 U.S. at 411).
[48] Rec. Doc. No. 45 at 4.
[49] *Id.* at p. 4–5.
[50] *Id.* at p. 5.
[51] *Id.*
[52] *Morales v. McCulloh*, 2019 WL 2774324, at *1 (M.D. La. July 2, 2019).

that diagnosis during her four-day incarceration.[53] On the first day of her incarceration, she was treated with an antibiotic ointment that the plaintiff alleged was known to be ineffective against MSRA infections; on the second day, she was prescribed two antibiotics, which were allegedly known to be ineffective against MSRA infections; and on the fourth and final day of her incarceration, she underwent another medical examination.[54] In dismissing the plaintiff's claims, this Court cited to several other cases for the proposition that: "'It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical need."[55] CorrectHealth attaches primacy to that statement, while Plaintiff distinguishes *Morales* because the plaintiff was treated three days out of the four that she was incarcerated.

While Plaintiff here may have been treated less often than the *Morales* plaintiff while he was in prison, the Second Amended Complaint avers that he received medical care at least three times, including a diagnostic test and medication. Therefore, Plaintiff's assertion that "the defendants refused to treat plaintiff, ignored his complaints, and otherwise engaged in conduct that evinced a wanton disregard for plaintiff's serious medical needs" is belied by his own allegations. Even if the standard of care was subpar, "[n]egligence, neglect, or medical malpractice does not rise to the level of a constitutional violation."[56] Plaintiff's allegations fail to plausibly demonstrate that CorrectHealth acted with deliberate indifference, so his episodic-acts-or-omissions claims must be dismissed.

---

[53] *Id.*
[54] *Id.* at *1–5.
[55] *Id.* at *4 (citing *Mickens v. Stalder*, 2008 WL 544240, at *2 (W.D. La. 2008) (citing *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997)); *Callaway v. Smith County*, 991 F.Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); Maywhether v. Foti*, 958 F.2d 91 (5th Cir. 1992)).
[56] *Id.* at * 4.

Because Plaintiff's constitutional claims fail 12(b)(6) scrutiny, his *Monell* claims based on episodic-acts-or-omissions also fail.[57]

### E. Conditions-of-Confinement Claims

Plaintiff added a conditions-of-confinement claim against CorrectHealth in the *Second Amended Complaint*.[58] Pre-trial detainees and convicted prisoners look to different constitutional sources for their rights to medical care in prison. The convicted prisoner looks to the Eighth Amendment's prohibition on cruel and unusual punishment while the state pre-trial detainee's constitutional rights flow from the procedural and substantive due process guarantees of the Fourteenth Amendment.[59]

A pre-trial detainee who brings a conditions-of-confinement claim must show under the *Bell v. Wolfish*[60] test: (1) a condition created by municipal policy, either explicit or *de facto*; and (2) that the condition is not reasonably related to a legitimate government purpose—that it is arbitrary or purposeless.[61] Where, as here, the plaintiff alleges a *de facto* policy, he must "demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."[62] If the condition is arbitrary or purposeless, then it amounts to punishment, which "may not constitutionally be inflicted upon detainees qua detainees."[63]

A pre-trial detainee asserting a conditions-of-confinement claim need not show

---

[57] *Id.* at * 5.
[58] Rec. Doc. No. 45, p. 9.
[59] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).
[60] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 640 (5th Cir. 1996)
[61] *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979).
[62] *Id.*
[63] *Id.*

deliberate indifference because the "jail officials' individual states of mind are not a dispute[d] issue in such cases."[64] However, the Fifth Circuit has cautioned that the standard is "functionally equivalent to a deliberate indifference inquiry" because the plaintiff must show that the execution of the policy led to the condition and that jail officials intended that the condition occur.[65] In other words, the plaintiff must show that the condition is the intended result of the explicit or *de facto* policy.

Neither party presented significant argument on this claim. Plaintiff's allegations as to this claim boil down to the assertion that the medical care provided in EBRPP is unconstitutionally deficient because of the lack of equipment, staff, and procedures to treat serious medical conditions. Plaintiff's claim is therefore best characterized as a *de facto* policy claim, which requires allegations of "a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice.'"[66] The Fifth Circuit instructs that "[p]roving a pattern is a heavy burden, and one that has rarely been met in our caselaw."[67]

Plaintiff's conditions-of-confinement claim hinges primarily on the Promise of Justice Initiative report, which is in the record and referenced in the *Second Amended Complaint*.[68] In a prior *Ruling*, the Court noted that the Promise of Justice Initiative report is of limited relevance because it is based on EBRPP conditions from 2012–2016, but Plaintiff was incarcerated in 2018.[69] Plaintiff avers that he has corrected this deficiency because "in any instance in which the plaintiff cited conclusions from 'The Promise of

---

[64] *Id.*
[65] *Id.* at 455.
[66] *Id.* at 452.
[67] *Id.*
[68] Rec. Doc. No. 45-1.
[69] Rec. Doc. No. 44, p. 12–13.

Justice Initiative' study, the plaintiff noted that the defendants knew about 'the unconstitutional conditions at EBRPP since at least 2015' and that those conditions were 'continuing at the time of plaintiff's incarceration, yet [the defendants] failed to act.'"[70] The assertion that the conditions described in the Promise of Justice Initiative report continued throughout Plaintiff's incarceration is entitled to no credit because it is unsubstantiated and conclusory.[71] While the Promise of Justice Initiative report lends some credence to Plaintiff's assertion that there is an extended or pervasive pattern of serious deficiencies in medical care at EBRPP, the two-year gap between the pattern potentially suggested by the facts recounted in the Promise of Justice Initiative report and the events giving rise to the instant suit weakens Plaintiff's assertion and denies it plausibility. The purported pattern must be so pervasive that it may be considered an intended condition or practice of jail officials.[72] Plaintiff has failed to plausibly allege a pattern that meets the jurisprudential bar because Plaintiff does not articulate a significant number of instances to demonstrate such a pattern, and there is a two-year gap in the purported pattern.

Plaintiff also directs the Court to a report docketed in another case.[73] On a 12(b)(6) motion to dismiss, the Court may consider only the complaint and documents referenced therein.

### F. Claims Against Individuals

Plaintiff sued CorrectHealth employees "S. Trusclair, Joyce Brown, K. Scott, J. Llovet, A. Conerly" ("the individual Defendants") and unnamed CorrectHealth employees

---

[70] Rec. Doc. No. 47, p. 5.
[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[72] *Shepherd*, 591 F. 3d at 452.
[73] Rec. Doc. No. 47, p. 6.

in their individual and official capacities and named them in every count.[74] CorrectHealth argues that Plaintiff's claims against the individual Defendants in their official capacities fail because they are duplicative. Plaintiff does not respond.

Under the law, Plaintiff's official capacity claims are duplicative. "'Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'"[75] As such, official capacity suits are "treated as a suit against the entity itself."[76] Since all of Plaintiff's claims are asserted against CorrectHealth and the individual Defendants in their official capacities, these claims are duplicative and are dismissed.

CorrectHealth argues that Plaintiff has failed to state a claim against the individual Defendants in their individual capacities because Plaintiff does not differentiate between them. Plaintiff counters that he has sufficiently differentiated between them because, where he asserted conduct by a particular defendant, he "describe[d] those against whom the allegations were made as 'including the known and unknown employees of the defendant CorrectHealth East Baton Rouge, LLC, identified in paragraph 3(C) above.'"[77]

The Court finds that Plaintiff's individual capacity claims must also be dismissed. Plaintiff must allege that a specific individual committed specific conduct giving rise to a constitutional violation.[78] Plaintiff's allegations boil down to the assertion that a CorrectHealth employee, and possibly one of those named in this case, did something. The Court cannot draw the inference that any CorrectHealth employee acted with any

---

[74] See Rec. Doc. No. 45.
[75] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted).
[76] *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation marks omitted).
[77] Rec. Doc. No. 47, p. 15.
[78] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

degree of intent from these allegations, and, moreover, that any identifiable CorrectHealth employee participated in Plaintiff's medical care. Accordingly, these claims must also be dismissed.

### G. Punitive Damages Claims

Plaintiff seeks punitive damages in this case. CorrectHealth asserts that punitive damages are neither available in § 1983 suits against private companies acting as municipal actors nor available in § 1983 suits against municipal employees sued in their individual capacities unless "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"[79] Plaintiff does not offer any response to CorrectHealth's argument. Plaintiff's failure to oppose CorrectHealth's argument amounts to a concession of CorrectHealth's argument.[80] As such, Plaintiff's claims for punitive damages are dismissed with prejudice. Furthermore, the Court finds that CorrectHealth's argument is a correct statement of the law, and punitive damages are not available in this case.[81]

### H. State Law Claims

In addition to his claims under 42 U.S.C. § 1983, Plaintiff also brings claims against CorrectHealth for negligence under state law.[82] Because the Court finds that Plaintiff has failed to allege facts sufficient to support his federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims in the current procedural posture.

---

[79] Rec. Doc. No. 46-1, p. 15 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983).
[80] *Dipietro v. Cole*, 2017 WL 5349492, at *3 (M.D. La. Nov. 13, 2017); *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 345 F. Supp. 3d 712, 740 (M.D. La. 2018).
[81] See *Moore v. LaSalle Corr., Inc*, 429 F. Supp. 3d 285, 289 (W.D. La. 2019) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, (1981)); *Smith v. Wade*, 461 U.S. 30, 56 (1983).
[82] Rec. Doc. No. 22, pp. 13–15.

## III. CONCLUSION

Plaintiff's official capacity claims against the individual Defendants are dismissed with prejudice. Plaintiff's episodic-acts-or-omissions claims are dismissed with prejudice as to all Defendants as are any *Monell* claims derivative of the episodic-acts-or-omissions claims.

Plaintiff's conditions-of-confinement claims are dismissed without prejudice because this is the first *Complaint* wherein Plaintiff asserts that claim against CorrectHealth and the individual Defendants. Plaintiff will have 21 days from the date of this *Ruling* to cure the deficiencies in the *Second Amended Complaint* as to the conditions-of-confinement claims. If Plaintiff does not cure the deficiencies, this dismissal will convert to a dismissal with prejudice over the federal claims, and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

Defendants' *Motion to Dismiss*[83] is granted in part and deferred in part.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 1, 2021</u>.

CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[83] Rec. Doc. No. 46-1, p. 14.