UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WALTER CARTER                                            CIVIL ACTION

VERSUS                                                              19-105-SDD-EWD

SID J. GAUTREAUX, III, ET AL.

## RULING

This matter is before the Court on the *Motion to Dismiss Plaintiff's Third Amended Complaint*[1] filed by Defendant, CorrectHealth East Baton Rouge, LLC ("CorrectHealth"). Plaintiff Walter Carter ("Plaintiff") filed an *Opposition*.[2] For the following reasons, CorrectHealth's *Motion* shall be granted, and this matter dismissed with prejudice.

## I. BACKGROUND

The Court previously granted in part three *Motions to Dismiss* filed by CorrectHealth.[3] Plaintiff filed a *Third Amended Complaint*[4] which CorrectHealth now moves to dismiss.[5] The salient facts were described in the prior *Ruling*.[6] As the Court summarized:

> Plaintiff entered East Baton Rouge Parish Prison ("EBRPP") on or about April 2, 2018 as a pre-trial detainee, and CorrectHealth conducted a medical screening on or about April 4. Plaintiff alleges that he repeatedly requested medical attention for the fourth finger of his left hand on the date of his entry and over the next 17 days. Plaintiff claims that his finger was painful, swollen, tender, and emitting discharge. Somewhere between April 9 and April 12, Plaintiff underwent an x-ray on his finger in response to his

---

[1] Rec. Doc. No. 60.
[2] Rec. Doc. No. 63.
[3] *See* Rec. Doc. Nos. 21, 44, 51.
[4] Rec. Doc. No. 57.
[5] Rec. Doc. No. 60.
[6] Rec. Doc. No. 51.

complaints that he could not move it and thought it was broken. He was offered over-the-counter medication. By April 17, Plaintiff's condition had worsened as was noted during a "med pass," and while he was scheduled to receive treatment on that day, for whatever reason, he did not. Finally, on April 19, 2018, Plaintiff was transferred to Our Lady of the Lake Regional Medical Center where he was diagnosed with a bone infection and his finger was amputated.[7]

In its most recent *Ruling*, the Court dismissed all of Plaintiff's claims except his conditions-of-confinement claim against CorrectHealth.[8]

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[9] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[10] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[11]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[7] Rec. Doc. No. 51, p. 1–2.
[8] *Id.* at 14.
[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[10] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[11] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 574 (2007)).

not do."[12] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that [the] defendant has acted unlawfully."[15] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[16] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[17]

### B. Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[18] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[19]

---

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter "*Twombly*").
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*").
[14] *Id.*
[15] *Id.*
[16] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[17] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[18] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[19] 42 U.S.C. § 1983.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[20]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[21] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[22]

### C. Private Entity Liability under § 1983

"For a plaintiff to state a viable claim under § 1983 against any private defendant, … the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[23]

CorrectHealth does not dispute that it is a state actor. Accordingly, the Court will apply *Monell v. Dep't of Soc. Servs. of the City of New York*.[24]

### D. Conditions-of-Confinement Claims

Plaintiff added a conditions-of-confinement claim against CorrectHealth in the *Second Amended Complaint*.[25] Pre-trial detainees and convicted prisoners look to different constitutional sources for their rights to medical care in prison. The convicted prisoner looks to the Eighth Amendment's prohibition on cruel and unusual punishment

---

[20] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[21] See *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[22] See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).
[23] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001).
[24] 436 U.S. 658 (1978).
[25] Rec. Doc. No. 45, p. 9.

while the state pre-trial detainee's constitutional rights flow from the procedural and substantive due process guarantees of the Fourteenth Amendment.[26]

A pre-trial detainee who brings a conditions-of-confinement claim must show under the *Bell v. Wolfish*[27] test: (1) a condition created by municipal policy, either explicit or *de facto*; and (2) that the condition is not reasonably related to a legitimate government purpose—that it is arbitrary or purposeless.[28] Where, as here, the plaintiff alleges a *de facto* policy, he must "demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."[29] If the condition is arbitrary or purposeless, then it amounts to punishment, which "may not constitutionally be inflicted upon detainees *qua* detainees."[30]

A pre-trial detainee asserting a conditions-of-confinement claim need not show deliberate indifference because the "jail officials' individual states of mind are not a dispute[d] issue in such cases."[31] However, the Fifth Circuit has cautioned that the standard is "functionally equivalent to a deliberate indifference inquiry" because the plaintiff must show that the execution of the policy led to the condition and that jail officials intended it to do so.[32] In other words, the plaintiff must show that the condition is the intended result of the explicit or *de facto* policy.

Plaintiff alleges that the medical care provided in EBRPP is constitutionally deficient because of the lack of equipment, staff, and procedures to treat serious medical

---

[26] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).
[27] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Hare*, 74 F.3d at 640.
[28] *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009) (quoting *Bell*, 441 U.S. at 538–39).
[29] *Shepherd*, 591 F.3d at 454.
[30] *Id*.
[31] *Id*.
[32] *Id*. at 455.

conditions. The purported pattern must be so pervasive that it may be considered an intended condition or practice of jail officials.[33] The Fifth Circuit instructs that "[p]roving a pattern is a heavy burden, one that has rarely been met in our caselaw."[34]

In its prior *Ruling*, the Court held that Plaintiff had not sufficiently alleged a pervasive pattern indicative of an intended condition or practice of jail officials.[35] Plaintiff incorporated in the *Second Amended Complaint* a report by the Promise of Justice Initiative (the "PJI Report") which suggested a pattern of unconstitutionally inadequate medical care at EBRPP from 2012–2016.[36] As previously noted by the Court, the PJI report is of limited relevance because it was based on EBRPP conditions between 2012–2016 before CorrectHealth took over, and Plaintiff was detained in April 2018.[37] In opposition to the *Motion to Dismiss the Second Amended Complaint*, Plaintiff pointed the Court to an expert report written by Dr. Homer Venters (the "Venters Report") in a different, albeit similar, case regarding mental health treatment at EBRPP.[38] The Court declined to consider the Venters Report because it was neither referenced nor incorporated in the *Second Amended Complaint*.[39] The only substantive amendment in the *Third Amended Complaint* was the incorporation by reference of the Venters Report. Therefore, the narrow question before the Court is: does the incorporation of the Venters Report into the *Third Amended Complaint* save Plaintiff's conditions-of-confinement claim from dismissal?

No. The Venters Report, issued in 2020, relies substantially on a report

---

[33] *Id.*
[34] *Id.*
[35] Rec. Doc. No. 51, p. 11.
[36] *Id.* at 10.
[37] *Id.*
[38] Rec. Doc. No. 47, p. 6.
[39] Rec. Doc. No. 51, p. 11.

commissioned by the East Baton Rouge Metro Council and prepared by Health Management Associates ("the HMA Report") in 2016.[40] The PJI Report, which the Court already found irrelevant, also relied heavily on the HMA Report.[41] Plaintiff avers that the Venters Report saves the *Third Amended Complaint* because it was issued in 2020, so its contents are more relevant than the PJI Report.[42] Further, Plaintiff asserts that the Venters Report relied not only the HMA Report, but also a 2019 tour of EBRPP and depositions that were taken in 2017 and later.[43] Plaintiff quotes a portion of the Venters Report:

> HMA noted gross deficiencies in basic medical …care …These systemic failings appeared to stem from a lack of basic training and competency of staff as well as failure to utilize health outcomes & medical utilization data that was available in the EMR[44] but never accessed. There is little evidence that CorrectHealth implemented any additional trainings or systems to address these deficiencies in care in any meaningful way.[45]

A more in-depth review of the Venters Report reveals that the report's analysis and opinions speak to prison conditions that existed prior to February 2017.

The report states:

> In addition, HMA noted gross deficiencies in basic medical and mental health care including suicide prevention, excessive use of antipsychotic medications for sedation of patients and chronic care, and a complete absence of mental health programing. These systemic failings appeared to stem from a lack of basic training and competency of staff as well as failure to utilize health outcomes & medical utilization data that was available in the EMR but never accessed. There is little evidence that CorrectHealth implemented any additional trainings or systems to address these deficiencies in care in any meaningful way *during the time Mr. Fano was in EBRPP and in fact, the overall rate of death would increase after CorrectHealth assumed responsibility (see findings below)*.[46]

---

[40] *See* Rec. Doc. No. 57-2.
[41] *See* Rec. Doc. No. 57-1.
[42] Rec. Doc. No. 63, p. 6–7.
[43] *Id*. at 6.
[44] "EMR" apparently stands for "Electronic Medical Record." Rec. Doc. No. 57-2, p. 9.
[45] Rec. Doc. No. 57, p. 3 (alterations are Plaintiff's).
[46] Rec. Doc. No. 57-2, p. 11 (emphasis added).

According to the Venters Report, Mr. Fano died in early February 2017.[47] Therefore, the conclusions contained within the Venters Report are also of limited relevance in this case since the report is focused on EBRPP's mental healthcare system in February 2017.

Additionally, most of the findings in the Venters Report concern mental health treatment at EBRPP. The maltreatment of mentally ill patients in EBRPP may be a symptom of a deficient healthcare system. But the failures of EBRPP's mental healthcare system do not make it plausible that EBRPP's entire system for dealing with serious medical issues is constitutionally deficient.

In sum, Plaintiff relies on the PJI Report, which critiques EBRPP's healthcare system as it existed before CorrectHealth took over. Plaintiff also cites the Venters Report, which is limited in its scope and relevancy insofar as it focuses on EBRPP's mental healthcare system in early 2017 immediately after CorrectHealth took over. Plaintiff's conclusory assertions that the referenced reports are probative of unconstitutional care do not cross the *Twombly* plausibility threshold. Nor does Plaintiff's rendition of the history of his medical care during his detention move the needle on plausibility. During his 17-day detention Plaintiff had medical screening on or about the third day of his detention;[48] an x-ray (which was negative);[49] was provided over-the-counter medication;[50] had a second medical appointment for treatment;[51] and was ultimately transportation to the hospital.[52] These allegations do not render plausible

---

[47] *Id*. at 12.
[48] Rec. Doc. No. 57, p. 5.
[49] *Id*.
[50] *Id*.
[51] *Id*. Plaintiff avers that CorrectHealth failed to properly treat him at the time with no further details.
[52] *Id*. at 6.

Plaintiff's assertion that CorrectHealth had a pervasive pattern of failing to ensure proper staffing, equipment, resources, monitoring policies, and training during his detention. Plaintiff has thus failed to allege a pattern that is so pervasive it could be said to be a custom or policy of CorrectHealth.

### E. State Law Claims

In addition to his claim under 42 U.S.C. § 1983, Plaintiff also brings a claim against CorrectHealth for negligence under state law.[53] Because the Court finds that Plaintiff has failed to allege facts sufficient to support his federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### III. CONCLUSION

Defendants' *Motion to Dismiss*[54] is GRANTED. The Court finds that further amendment would be futile, and therefore, dismisses the *Third Amended Complaint* with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 29, 2022</u>.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[53] *Id.* at 11–15.
[54] Rec. Doc. No. 60.

Document Number: 70510